Good morning, may it please the court. Howard Goodfriend, representing the appellants Bowen Property Management and John Ballas, who are defendants below. Keeping in mind the court's admonition, I'd like to remind myself that I'd like to reserve five minutes for rebuttal, so I'll try and do that. We're asking this court to reverse the district court judgment in favor of the plaintiffs, Somalabad and Krieger, on their claims that Bowen retaliated against them under section 3617 of the Fair Housing Act. Under 3617, the plaintiff's burden to establish a prima facie case requires proof that, a, the plaintiff engaged in protected activity, b, that the defendant subjected the plaintiff to adverse action, and c, that there's a causal link between that protected activity and the adverse action. It's our contention that the plaintiff failed on all three counts. First, we've not ---- Let me, this is kind of hard to compress, but let me try for the sake of getting your response to it. If I've got it right, Krieger's, I'm just going to use Krieger's easier, sought damages for retaliatory conduct, that is for, in effect, causing his arrest and his prosecution, right? For helping the Russian tenants try to do something about Lemon's bribery. So the damages that are sought come from the arrest and the prosecution, if I understand it correctly. Absolutely correct. Then, in effect, isn't the claim that's being made akin to one for malicious prosecution? That's certainly our position, Your Honor, it is. Okay, if that's so, then you would have, then there would have to be a termination that's favorable, and there wasn't. That's also correct. That's the position that you've got. That's one of the bases for our argument that the trial court erred in not granting judgment as a matter of law. If you were to prevail on that, do you need anything else? No. That would be the end of the case, because, in effect, the only damages they claimed stemmed from the arrest, prosecution, and conviction. There are several approaches to that, I suppose. One would be, can a crime be protected activity? That was our primary argument in the brief. Another would be, even if it might be in some circumstance, it would not be the proximate cause, because the arrest and prosecution are independent intervening causes. Right. That's why I said it. Have I got this right? You absolutely do. That's why I said our argument implicates all three elements of the prima facie case. Well, I have a ---- Any of all three. It's any one of the two. And any one of them. Yeah. If you don't meet any one of them, it's failed. Well, I have some degree of problem with the proximate cause argument, because if I got it right, Bowen actually told or encouraged at least Lemons to call the police. Lemons? So how can one say as a matter of law that Bowen had no involvement and could not have in any way as a matter of law caused the arrest? Well, because as a matter of law, the request to call the police was completely in good faith, and it was based upon, it was on June 1st, after Natalia Pratchett on May 30th said, Lemons is accepting bribes. On May 31st, told Mr. Ballas, I know I told you yesterday she was accepting bribes, but I lied. She isn't. And then called him again in Portland the next day and said, I know I told you yesterday that she wasn't taking bribes, but I lied then. In fact, she is. But if Lemons called and said, she's accusing, she's trying to extort me, and Ballas said, we just have to call the police. I can't tell what's going on. What would it matter that Pratchett changed her story a couple of times? I'm thinking, suppose I'm a professional thief and there is some marauder at my door. Even though I'm a professional thief and he's coming to steal my stolen goods, I can still call the police, can't I, if he's hammering on my door and posing a threat to me? Absolutely. Yeah, you can. I guess the point is that for purposes of the defendant subjecting the plaintiff to adverse action, if the defendant in good faith and objectively reasonable circumstances under all the evidence that's presented to him at the time asks the police to do an investigation, which is really all that they have against Mr. Ballas, is the single statement to Lemons, better call the police. And the police then do all this investigation, talk to all the witnesses, interview these plaintiffs, and then make a finding of probable cause, and then beyond that subject that finding of probable cause to the independent discretion of a state prosecutor, who then brings the prosecution without any allegation or evidence that Mr. Ballas or an individual defendant, corporate defendant, controlled or any way further influenced that prosecution, that is not any causal link between the defendant's action and the resulting adverse action. The adverse action is the prosecution. And the defendant, Mr. Ballas and his corporate principal, Bowen, did not subject these plaintiffs to adverse action. He did not cause the adverse action. Much like in this Court's Section 1983 cases that are discussed in the brief, I think. Arnold? Yeah. Against IBM? Correct. That's the one. Thank you, Your Honor. The majority case was that? I couldn't hear. The one that we discussed at great length is Arnold v. IBM. Oh, Arnold. Yeah, and that's under Section 1983. But, you know, we also cited a case from the Eighth Circuit, which I think is quite. . . See, I don't have any trouble with the general proposition. What I have trouble with is that Bowen may have been complicit in providing false information to the police. I mean, it's a tribal issue, a fact on that. I don't think there's any. . . I don't get there. I don't think there's any evidence of that whatsoever. But if I were to get there, it seems to me that that creates a bit of a problem. Because under our 1983 law, providing false information, even if there is an intervening act by the prosecutor in a way, I mean, you can still get on the hook for it. Right. And all Mr. Ballas did was, say, call the police. And then there was one other contact when he was asked by Detective Lush to fax to him the handwritten note that provided the list of tenants and the money that they were demanding be refunded, which he did without any further discussion at all. And that was not false. That was, in fact, provided to Mr. Ballas. The other case I. . . Go ahead. Do the criminal convictions establish as a matter of race judicata that the Plaintiffs were engaging in criminal conduct? Well, under State law they do. And we cited the State case that basically says that as opposed to an Alfred plea where you actually admit guilt, it is as a matter of issue preclusion barred. I think that's detention of staff. But I think the other. . . What is the scope of the criminal plea? In other words, they were charged originally with extortion, and one or more of the others were charged with intimidation of a witness. They pled to disorderly conduct, which is a misdemeanor in that jurisdiction. Correct. And it all relates back to the extortion and so forth. But I'm not so sure how broad the plea was. In other words, there was some type of admission via the plea, but that's not necessarily coextensive, it would seem to me. Well, I think it is, Your Honor. Given. . . Why would that be? Because the elements of the crime that they pled to disorderly conduct, and it's cited in our brief, it's Spokane Municipal Code, Section 10.10.020. It says, No person may intentionally cause or recklessly create a risk of public inconvenience, annoyance, or alarm by. . . And Subsection C is the one that they admitted in their plea statement in Superior Court in Spokane County. C says, Disturbing any lawful assembly of persons without lawful authority. This was the meeting at which they attended. This was the lawful assembly of persons. These were the acts that they claimed were the protected activity that they were engaged in. So your adversary's position that there may have been other conduct that was engaged in by these individuals, such as Krieger serving as the interpreter at the session and so forth. Well, those activities occurred at that meeting. There were perhaps other activities that they were involved in with other tenants, but there's no evidence that anyone, not even Ms. Lemons, was aware of that. I mean, the real retaliation case here was against Ms. Pratt. She was the assistant manager who was fired, and that is no longer before the court. That judgment's been settled. Counsel, is there any authority, any circuit authority or higher, from our circuit that establishes whether a crime can ever be protected activity under this statute? There is no circuit authority that I'm aware of under 3617 in this or any other circuit. The closest case I found, which I cited in our brief, is Bradley v. Arkansas Department of Education. It's from the Eighth Circuit, and it is cited, I think, in both the opening and the reply brief. And it affirms the dismissal of retaliation claim under the Rehabilitation Act brought by parents of a handicapped student. The parent who was claiming retaliation was prosecuted in state court for threatening school officials, and he was saying that that prosecution was the result of a retaliatory animus. And the Court of Appeals of the Eighth Circuit affirmed the dismissal of that, basically saying that where charges are brought at the discretion of the prosecutor, they cannot as a matter of law be brought in response to protected activity. That's the closest case I have. Your voice trailed off, and I missed the last piece. I said as a matter of law, the prosecution cannot be brought, cannot be deemed to be as a result of protected activity because it was at the discretion of state prosecutors. I'd like to reserve the rest of my time if the Court has no further questions. All right. Thank you very much. Thank you. Ms. Schaefer. Good morning, and may it please the Court. My name is Joanna Schaefer, and I'm here with my supervisor, Al McNeil. Thank you. Krieger and Samalov were retaliated against, and it's for that reason that we request that you affirm the decision of the trial courts and uphold the Housing Act. Counsel, as I understand it, the retaliation is, or rather the adverse action that you claim, is what exactly? The calling the police, the prosecution, what action? We claim that the adverse action is falsely calling the police, to claim extortion. Falsely calling the police. To cover up Ms. Lemon's bribery scheme, not once, but twice, after Detective Losh had closed the investigation. Wait a minute. I know the facts, but I'm trying to narrow down the conceptual aspect. Falsely calling the police is the adverse action. Now, why doesn't it, I have a couple of questions about that. First of all, why doesn't the conviction establish that it was not, in fact, a false report? Your Honor, we cited. We're committing criminal conduct. Your Honor, we cited several cases that a guilty plea is not necessarily barred, but it can be left up to the jury to decide whether or not what the defendants pled to actually is what they committed. And here, that evidence was brought to the jury, and the jury decided that the defendants were. I don't remember good authority that was on point on that. What's your best case on that? Your Honor, I would. I believe. Actually, Your Honor, I apologize. I had thought that criminal conviction, whether on a guilty plea or a jury verdict, established that the defendant had, in fact, committed each element of the crime of which he was convicted. Your Honor, here in Washington, the Washington courts take a look at the guilty pleas in three different ways. We have the Alford plea, which is what the appellants brought up, and that that's not an admission of guilt. Also, we have. Which is your best Washington? I don't have it before me, Your Honor. Is this, incidentally, a NOLO plea or a guilty plea? Your Honor, it was a guilty plea, but the defendants asked the court to have it be treated as an in re bar plea, and there was no objection to that from the prosecutor. If they pleaded guilty, that means they're guilty, right? Not in the case of an in re bar plea, Your Honor. In an in re bar plea, the courts in Washington will allow you to plead in something different, and in many cases, completely different. You could be arrested for downloading pornography, and based on what they want to charge you with, you could end up pleading to stealing 10,000 songs off the Internet. And so an in re bar plea is not necessarily treated as a guilty plea, and at the time. Would a bar plea establish guilt for the crime that the person pleaded guilty to? Not necessarily, which is what I was explaining, that the in re bar plea, while they admit that they completed guilty to it, it's more of a facade in that they have to plead guilty to something. It may not necessarily be what they did. And if you look at the defendant's testimony before the court here at the time of sentencing, they told the judge the only reason why they were pleading guilty was because they were facing deportation. And that was such a high offense that they pled guilty because they were only seeking probation based on a misdemeanor and not a felony. I'm looking at your table here. I don't see the bar case. Where is it? The in re bar plea, Your Honor, case got pulled out in one of the edits somehow. Also it's not cited to us? It is not, Your Honor. I can provide it later if you would like. We'll direct you to if we want you to. Okay. You don't happen to have the cite with you, do you? I do not, Your Honor. It's a slightly different question. Putting aside sort of the res judicata significance of the plea, here, if I got it right, all the damages that are claimed to flow from the adverse action have to do with the arrest and the prosecution. There is, no matter how you slice it, no favorable result from the point of view of the then defendants, the present plaintiffs. So by analogy to cases for malicious prosecution, how can they pursue a claim for what happened here? Well, Your Honors, Bowen's trying to say, and most eloquently, that they were innocent. They did nothing. They were just overwhelmed by all of these conflicting stories about what was really going on and that all they could do was have Lemons call the police. And that, Your Honor, is not the case. And that is not the case that the jury found either. Well, okay. Well, suppose that's true. I mean, suppose that's so. If you analogize to a claim for malicious prosecution, you can't pursue that theory unless the result was favorable, and it wasn't. Was it? Your Honor, in that my clients did plead probation, that's not necessarily favorable. But if you look at the circumstances for why they pled, then it makes sense. They succumb to the retaliation. Can you look behind it? I mean, I don't know that malicious prosecution turns upon the motive or what the defendant in the underlying action was thinking. If you – All we look at is to see whether the result was favorable, and it wasn't. Well, this is akin to malicious prosecution. If you look at the cases for retaliation, all the plaintiff has to show is that the defendant in some way coerced, intimidated, or interfered with them. And the bringing of charges falsely, and knowing that Lemons could have been taking bribes, they knew that, and they confirmed that it could be true, that once they've falsely done that, that is where the retaliation comes into play, and they have now retaliated. I don't understand something about your argument. I think you're saying favorable termination means a good deal. So if somebody called the police and said, A, murdered B, and he managed to plead it down to manslaughter, that would be a favorable termination and would furnish a basis for malicious prosecution of the person who called the police. Have I got your argument right? Your Honor, no. And I would not say that this was necessarily a favorable disposition. However, this is not a malicious prosecution case. This is a retaliation case. And if you look at the retaliation cases, there are times when retaliation can be upheld against, in the San Tropez case, against the condo manager who called the police to have their tenant's car towed, and while the police were right in towing it, the retaliation, the discrimination case was still allowed to be upheld because the reason he called the police was because he was trying to discriminate. And the reason that the police was called here was because they were trying to retaliate. Which case was that? The San Tropez case, Your Honor, Wilson v. San Tropez Condo Association. All right. Let me clarify something. The damages in this case, if I got it right, all stem from the arrest and the prosecution. I mean, that's what Krieger testified to, and that's what Zimovalov, whatever it is, testified to. Is that right? That's correct, Your Honor. Okay. I don't see that case you just mentioned in your table of authorities. Is it? Am I missing it? You might. I believe it was in our section. We had a footnote about it. It might not be in the table of authorities. I apologize, Your Honor. Also, if you look at the people helpers case, which is one of the reasons why Judge the Honorable Judge Shea denied summary judgment, in that case, the police were called to investigate. And the police came and cited people helpers for several violations. But let me ask you something about this that I don't get. I don't know if we reached this under a proper conceptualization of the case. But the way I understand the facts, and maybe I misunderstand them and you can educate me on it. The way I understand it, Bowen works in Portland, and he gets a call from, he gets multiple calls. He gets calls from Pratt first saying, your manager is demanding bribes, then saying, I lied, your manager is not demanding bribes. And then I think she makes another call to him and says, your manager in Seattle is demanding bribes, and I lied when I said I had lied. And he gets a call from the manager that the tenants are threatening me, and it strikes me, that's all going on in Seattle. He's in Portland. As a practical matter, there's no way he could know what the truth is. But he does know that his manager is claiming that she's being physically threatened. What could any prudent boss do except tell his underling, well, if somebody's committing a crime against you or threatening you with violence or something, call the cops. What else can a prudent boss do in Portland when a subordinate in Seattle claims this? You can let the ideas, I don't know what's happening, let the police sort it out. They'll be able to figure it out. If you're making a false report, maybe they'll charge you. If you're being threatened, maybe they'll take away the threat or charge somebody who's making the threat, whatever. How is he supposed to know? Your Honor, a prudent boss would have investigated the alleged bribery because it is a crime. And a prudent boss ---- Wait a minute. Pratt says bribes are being demanded, and then she says, I lied when I said bribes are being demanded. You're saying it's not enough for Bowen to sit in Portland and say, I don't know what's going on. What he needs to do is immediately go to the airport, get on a Horizon plane, go to Seattle and launch a one-man or maybe hire detectives and investigate. No, Detective Losh did investigate, and he got conflicting information. I mean, I think Judge Kleinfeld's point is well taken. Do you know what I'm saying? In other words, once Losh got involved, he goes out there, he gets information that says basically from tenants in the building, no, the person who's soliciting bribes here is actually the person who initially was one of the plaintiffs in this case. In other words, so there was conflicting information. There was an investigation conducted, and you seem to be suggesting that that investigation in the first instance should have been done by Ballas, the Bowen representative who received the conflicting calls as to ---- Your Honor, I am not saying that. I'm saying that Bowen should have been involved more in the investigation. They should have been the point person. You're saying when his subordinate says, I'm being threatened, he can't say, well, if you're being threatened, call the cops. He has to say, well, don't do anything. Don't call the cops. Don't do a thing until I complete my investigation. Your Honor, here there was the alleged bribery as well, and what Bowen did was Bowen let the fox guard the hen house. Bowen let the person who was being accused of bribes, who they investigated a little bit and had some conflicting reports about the bribes, be the person who was the point person for the police who had a reason, and who Bowen know had a reason to try and hide some of the truth so that she could hopefully complete her extortion claim and make everything just go away. How do you distinguish this case from Arnold, though? I mean, Arnold, again, IBM went in there. They're the ones that brought about the complaint. They're the ones that provided resources to the police to investigate. They're the ones that had an ax to grind. And the Ninth Circuit said, well, wait a minute. The decision to prosecute was made by the prosecutorial authorities, by the police and by the assistant district attorney. It was not made by IBM, and as you know, in that case, and the reason I mention this is I'd like to maybe I misunderstand either Arnold or this case, but in that case, albeit it's a relatively old case back in 1981, but the circuit said you have to show that IBM somehow either controlled, exerted undue influence, directed the prosecution. Otherwise, you don't have the requisite nexus between the adverse action and the protected activity. Now, how is this case different? This case is different, Your Honor, because Bowen told Lemons to be the point person. They never ñ they knew that she could potentially provide false information because she was trying to cover a potential bribery scheme, which she was engaging in bribery. But why is it ñ I know it's a circle, but I'm not ñ you keep using providing ñ they knew she was providing false information. We don't really know it was false information. We do know that ultimately the plaintiffs in this case pled guilty to something in relation to this scheme. Well, they knew that she could provide false information because of why she was bringing these claims. And she was basically controlling the investigation for Bowen. And as I said before, that is like letting the fox guard the hen house. Bowen could have been the point person, and then there would be no just look of whether or not it was improper. And if you look at what Bowen did after, Bowen condoned Lemons' activity all along. They never fired her. She continued to work for the company, was even promoted. And they just showed that they are totally condoning her bribery scheme, and they allowed her to be the person who was the police contact. And if you look at the Retaliation Act, if my clients were engaging in extortion, which they weren't, then they could not have brought a claim for retaliation because then it wouldn't have been a false prosecution. And the jury heard that, and they decided that it was a false accusation, and thus there was retaliation. Okay. Thank you, Schaefer. Thank you, Your Honor. Mr. Goodfriend. Thank you. Just a few quick points in the short time remaining. In the typical retaliation case, the ones that were cited and discussed by counsel for appellees, there's a campaign of harassment brought by either a property owner or a neighbor's association or something like that, which also entails at some point perhaps getting the authorities involved. And if you enlist the authorities and you can control their actions in some way, or at least the plaintiff can establish that they share the discriminatory or retaliatory animus of the people involved and are not acting independently, the plaintiff can recover. And usually the plaintiff recovers for their emotional distress as a result of this harassment. Well, there's a tiny bit of that lurking here, isn't there? Well, there was, but it was not found by the jury. I mean, all the damages, the jury, if you look at the special verdict form, there were no emotional distress or non-economic damages awarded to any of the plaintiffs. All of the damages were the economic damages that, according to the undisputed evidence, resulted from the stigma and the consequences of a criminal conviction. Mr. Krieger lost his job with the school district because of his conviction. Mr. Samalov lost his contracting business because the conviction ruined his reputation. Those were the damages that they testified to, and those were the damages that were awarded. Second of all, in terms of the analogy to malicious prosecution, I think it is apt. And the Heck v. Humphrey case, which is a Section 1983 case, but it was followed by this court in Cabrera, it distinguishes between if you're claiming about, okay, I was the victim of excessive force in the course of my arrest, the fact that you were convicted has no bearing on those damages. It doesn't matter. But if what you're claiming is I suffered damages because of this conviction, you cannot collaterally attack that conviction by bringing a civil action because you are basically undermining state law. And let me point out the colloquy on the guilty plea, because I think it's clear and undisputed. Each of these plaintiffs basically admit guilt to being present and disrupting a lawful assembly. They acknowledge it on the record. There was not a, oh, I think a jury could find this, so, you know, I'm not going to contest it. They admitted it, and that was their conviction. We asked the court to do this. Thank you. Thank you. Mr. Goodfriend, thanks, counsel, for your argument, both of you. And the matter just argued will be submitted. And we will next hear argument in Columbia v. Total Brain Care Holdings. Thank you.
judges: Rymer, Kleinfeld, Hurley